IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAMILOLA ADEPOJU,

        Plaintiff,

    v.                                   Civil Action No. 3:25cv245

SAM SCALES, *et al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Damilola Adepoju's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"). (ECF No. 1.)[1] Mr. Adepoju moves this Court to grant the Petition and order the "Federal Bureau of Prisons ('BOP') to immediately release him from the Federal Correctional Institution Allenwood Low and return him to the Residential Reentry Center in Baltimore, Maryland." (ECF No. 9, at 1.) Respondents Sam Scales, Residential Reentry Manager for the Federal Bureau of Prisons, Baltimore and J. Greene, the Warden of FCI Allenwood Low (collectively "Respondents"), filed a Motion to Dismiss and a Response to Petition for Writ of Habeas Corpus and Memorandum of Law in Support of Respondents' Motion to Dismiss.[2] (ECF Nos. 17, 18.) Mr. Adepoju replied. (ECF No. 19.) On May 14, 2025, the Court held a hearing. The matter is ripe for disposition.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

[2] In in a footnote in the Motion to Dismiss, Respondents contend that Stephan B. Smith, Richmond County Sheriff, whom Mr. Adepoju also named a respondent, "is no longer a proper defendant and should be dismissed" because Mr. Adepoju "is no longer housed at the Northern Neck Regional Jail in Richmond County[.]" (ECF No. 17, at 1 n.1.) Thus, the Motion to Dismiss purports to have been filed only on behalf of Respondents Sam Scales and J. Greene. (ECF No. 17, at 1.)

For the reasons articulated below, and based on the plainly unconstitutional actions undertaken by the United States, the Court will grant Mr. Adepoju's Petition, (ECF No. 1), and deny Respondents' Motion to Dismiss, (ECF No. 17).

## I. Factual and Procedural Background

### A.    Factual Background

The Court begins by summarizing the undisputed facts underlying the Petition.  Mr. Adepoju is a lawful permanent resident of the United States.  (ECF No. 6, at 1; *see also* ECF No. 18, at 3.)  On July 21, 2021, in the United States District Court for the District of Massachusetts, Mr. Adepoju waived indictment and pled guilty to three counts of a criminal information: conspiracy to commit wire fraud at a value greater than $10,000, in violation of 18 U.S.C. § 1349; aggravated identity theft in violation of 18 U.S.C. § 1028A; and money laundering at a value greater than $10,000, in violation of 18 U.S.C. § 1957.  (ECF No. 6, at 1, 6; *see also* ECF No. 18, at 3; *United States v. Adepoju*, No. 1:21cr10207 (D. Mass.) (ECF Nos. 21, 22.).)[3]  On April 14, 2022, Mr. Adepoju was sentenced to four years' imprisonment.  (ECF No. 6, at 1, 6; *see also* ECF No. 18, at 3 (citing *United States v. Adepoju*, No. 1:21cr10207 (D. Mass.) (ECF No. 63)).)  The court did not impose a term of supervision.  (ECF No. 6, at 7; *United States v.*

---

[3] The Court takes judicial notice of the docket in *United States v. Adepoju*, No. 1:21cr10207 (D. Mass.).  *See Witthohn v. Fed. Ins. Co.*, 164 F.App'x 395, 396–97 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12 motion to dismiss into one for summary judgment] so long as the authenticity of these documents is not disputed.")

*Adepoju*, No. 1:21cr10207 (D. Mass.) (ECF No. 63)). Mr. Adepoju's projected release date is October 23, 2025. (ECF No. 6-4, at 5; *see also* ECF No. 18, at 3.)

On February 7, 2024, Immigration and Customs Enforcement ("ICE") issued an immigration detainer against Mr. Adepoju. (ECF No. 6-4, at 11; ECF No. 6, at 2; *see also* ECF No. 18, at 3.) The parties agree that no final removal order has been issued against Mr. Adepoju. (ECF No. 6-4, at 11; *see also* ECF No. 18, at 3.)

Over the time he was incarcerated, Mr. Adepoju earned time credits under the First Step Act ("FSA").[4] (ECF No. 6-4, at 3–5.) "Because Mr. Adepoju was not sentenced to any term of supervised release, those credits were applied to prerelease custody." (ECF No. 6, at 7.) On December 4, 2024, "after Mr. Adepoju accrued hundreds of days of earned time credits and maintained the minimum or low recidivism risk necessary to apply credits under the FSA, the [Bureau of Prisons] released Mr. Adepoju from prison to a residential reentry center in Baltimore, Maryland." (ECF No. 6, at 2; *see also* ECF No. 18, at 3 ("Under the First Step Act, Adepoju was transferred in December 2024 to a residential reentry center . . . in Baltimore, Maryland.").)

Fewer than two months later, on January 30, 2025, the United States Department of Justice issued a memorandum ("Memorandum") with the subject "Updated Guidance on Application of Federal Time Credits to Pre Release Custody for all Non-U.S. Citizens with an Active Detainer." (ECF No. 6-1, at 2.) The Memorandum stated, in part:

> The purpose of this memorandum is to provide updated guidance on the referral and placement of non-U.S. citizens with active detainers in pre-release custody, both

---

[4] As explained more fully below, the FSA "established a system of time credits and provided eligible inmates the opportunity to earn those credits for participating in evidence-based recidivism reduction programming and productive activities." *Valladares v. Ray*, 130 F.4th 74, 79 (4th Cir. 2025). Importantly, under the FSA, "[t]he award and computation of time credits is mandatory." *Id.*

3

Residential Reentry Centers (RRC) and Home Confinement (HC), as referenced in Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4).

**Cessation of Referral and Placement of Individuals with Immigration Detainers** Effective immediately, pending placements in pre-release custody for application of Federal Time Credits (FTC) for all non-U.S. citizens with active detainers will be canceled. Cancelation will occur in all cases where a detainer is lodged and includes cases where a final order of deportation has not been issued.

(ECF No. 6-1, at 2 (emphasis in original).)

"On February 11, 2025, Mr. Adepoju was rearrested by the U.S. Marshals Service" and "removed from his residential reentry center in Maryland and placed in" Rappahannock Regional Jail in Stafford Virginia. (ECF No. 6, at 8; *see also* ECF No. 18 ("On February 11, 2025, Adepoju was reincarcerated at the Rappahannock Regional Jail because of his ICE detainer.").) "He was not given any notice, explanation, or an opportunity to contest this decision." (ECF No. 6, at 3.) "[O]n March 25, 2025", again without notice, "[h]e was moved to the Northern Neck Regional Jail in Warsaw, Virginia." (ECF No. 6, at 8.) On March 28, 2025—after the filing of his Petition—Mr. Adepoju was transferred to a fourth facility: FCI Allenwood Low in Allenwood, Pennsylvania. (ECF No. 8, at 1 n.1; *see also* ECF No. 18, at 4 ("Adepoju has been transferred to FCI Allenwood.").)

The United States has not disputed that "the BOP has still not provided Mr. Adepoju or counsel with any explanation for his reincarceration[.]" (ECF No. 6, at 3.) However, Mr. Adepoju's "[c]ounsel was unofficially informed that Mr. Adepoju was arrested pursuant to some unnamed 'executive order.'" (ECF No. 6, at 11 n.8.) Mr. Adepoju's counsel notes that "[i]t is unclear if that 'executive order' is really the January 30, 2025 memorandum from the

[Department of Justice], as "counsel is unaware of any other Executive Order related to this issue."[5]  (ECF No. 6, at 11 n.8.)

### B.   **Procedural Background**

On March 27, 2025, Mr. Adepoju filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (ECF No. 1.)  The same day, Mr. Adepoju filed a Motion for Appointment of Counsel, (ECF No. 2), which the Court granted on March 28, 2025, directing the clerk to appoint a Federal Public Defender "for the purpose of assisting him with briefing his Petition for a Writ of Habeas Corpus[.]"  (ECF No. 4, at 1.)  On March 28, 2025, counsel for Mr. Adepoju filed a Memorandum in Support of Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (ECF No. 6.)

On April 2, 2025, Mr. Adepoju filed a Motion for Temporary Restraining Order (the "TRO").  (ECF No. 8.)  The parties appeared before this Court on April 3, 2025, for the sole purpose of arguing whether the Court has jurisdiction over this matter.  (ECF Nos. 10, 12.)  At the hearing, counsel for Mr. Adepoju argued that this Court has jurisdiction because Mr. Adepoju was held at the Northern Neck Regional Jail at the time the Petition was filed on March 27, 2025.  Despite his now-fourth placement in a new facility in Pennsylvania, the United States did not dispute that this Court has jurisdiction given the place of incarceration at Northern Neck Regional Jail when the petition was filed.

On April 4, 2025, Mr. Adepoju filed a motion to withdraw the Motion for Temporary Restraining Order, submitting that "briefing on the Habeas Petition itself is preferred, allowing

---

[5] In its brief, the United States confirms this understanding, writing that "[o]n February 11, 2025, Adepoju was reincarcerated at the Rappahannock Regional Jail because of his ICE detainer" and references the January 30, 2025 Department of Justice Memorandum.  (ECF No. 18, at 4.)

the Court to proceed on consideration of the Habeas Petition alone, rather than briefing on the Habeas Petition and the Motion for Temporary Restraining Order, potentially delaying relief for Mr. Adepoju." (ECF No. 14, at 2.)  The Court granted Mr. Adepoju's motion to withdraw the TRO.  (ECF No. 15.)

On April 7, 2025, this Court granted the parties' Joint Motion to Set Briefing Schedule, ordering that Respondents "file a response to Mr. Adepoju's Petition for Writ of Habeas Corpus no later than April 16, 2025" and Mr. Adepoju "file any response no later than April 23, 2025." (ECF No. 16, at 1.)

On April 16, 2025, Respondents Sam Scales and J. Greene filed a Motion to Dismiss and a Response to Petition for Writ of Habeas Corpus and Memorandum of Law in Support of Respondents' Motion to Dismiss. (ECF Nos. 17, 18.)  Mr. Adepoju replied.  (ECF No. 19.)  On May 14, 2025, the Court held a hearing.[6]  Briefing is complete and the parties have been heard.

## II.  Standard of Review

### A.  Motion to Dismiss Under Rule 12(b)(1)

Federal district courts are courts of limited subject matter jurisdiction.  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a plaintiff's complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) only if the material jurisdictional facts are not

---

[6] At the hearing, the United States represented it was not aware whether there was access to an immigration court at the Baltimore residential reentry center, the Rappahannock Regional Jail, or the Northern Neck Regional Jail.  The United States confirmed that access to an immigration court is available at FCI Allenwood Low.

in dispute and the moving party is entitled to prevail as a matter of law." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018). "A court's determination of subject matter jurisdiction addresses whether the court has the authority to entertain a particular kind of case, not whether a claim for relief is viable under a particular construction of a statute." *Id.* at 645–46.

A motion to dismiss brought pursuant to Rule 12(b)(1) may challenge the existence of subject matter jurisdiction in two ways. *Kerns. v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n v. Va. Intern. Terminals, Inc.*, 914 F.Supp. 1335, 1338 (E.D. Va. 1996 (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F.Supp. at 1338.

Alternatively, a Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. When a litigant raises a Rule 12(b)(1) motion to challenge "the factual basis for subject matter jurisdiction," the petitioner bears "the burden of proving subject matter jurisdiction." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court may weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to

7

the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338.; *see also Adams*, 697 F.2d at 1219.

In sum, when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. *Kerns*, 585 F.3d at 193. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts. *Id.* "And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns*, 585 F.3d at 193; *see also Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 368 F. Supp. 3d 889, 893 (E.D. Va. 2019) ("When such a factual challenge is made to jurisdiction, the jurisdictional facts must be determined with the same procedural safeguards as afforded through a motion for summary judgment").

Here, Respondents challenge the Petition on the first ground, arguing that the Court must dismiss this action because Petition fails to establish subject matter jurisdiction on its face. (ECF No. 18, at 6 n.6.) Accordingly, at this stage of the litigation, the Court assumes as true the allegations in Petition.

### B.    Motion to Dismiss Under Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

8

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough.  *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief."  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense."  *Giacomelli*, 588 F.3d at 193 (citation omitted).  The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

9

### III.  Analysis

**A.**    **This Court Has Jurisdiction Over This Action**

**1.**    **This Court Exercises Subject Matter Jurisdiction Under 28 U.S.C. § 2241**

"Section 2241 bestows upon district courts the power to grant habeas corpus relief to a 'prisoner' who 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *In re Wright*, 826 F.3d 774, 778 (4th Cir. 2016) (quoting 28 U.S.C. § 2241).  "It is well established that 'attacks on the execution of a sentence are properly raised in a § 2241 petition.'" *Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015) (quoting *In re Avery W. Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997)).  Mr. Adepoju's Petition claims that the execution of his sentence is unlawful because the BOP unlawfully reincarcerated Mr. Adepoju in violation of the First Step Act ("FSA"), which required the BOP to place him in a residential reentry center based on his accrual of time credits under that Act.  (ECF No. 6, at 11.)  He further contends that the execution of his sentence violates the Due Process Clause of the Fifth and Fourteenth Amendments, which he argues creates a liberty interest in his placement in a residential reentry center upon accrual of the requisite time credits.  (ECF No. 6, at 14.)  The United States contends that this Court lacks jurisdiction over Mr. Adepoju's Petition because "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment.'"  (ECF No. 18, at 6 (quoting *Tapia v. United States*, 564 U.S. 319, 331 (2011) (quoting 18 U.S.C. § 3621(b))).)  Under the same statute, "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."  18 U.S.C. § 3621(b)(5).

In support of its argument that this Court lacks jurisdiction, the United States cites two cases in which courts found that they lacked subject matter jurisdiction over habeas petitions,

neither of which involved the accrual of time credits under the FSA. (ECF No. 18, at 6 n.6 (citing *Andrews v. Ramos*, No. 5:22-HC-2114-FL, 2023 WL 1822837, at *1 (E.D.N.C. Feb. 8, 2023); *Dial v. Doerer*, No. ED CV 24-2227-AB(E), 2025 WL 868757, at *1 (C.D. Cal. Jan. 22, 2025)).) While both courts—as this one—recognized that the Bureau of Prisons generally has exclusive authority to determine an inmate's imprisonment, they did so applying statutes materially different from the FSA, which the Court applies today. *Andrews*, 2023 WL 1822837, at *1, *Dial*, 2025 WL 868757, at *1. *Andrews* involved a prisoner's challenge to the BOP's denial of his request for home incarceration under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). 2023 WL 1822837, at *1. The CARES Act provides that "the Director of the [BOP] *may* lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement[.]" Pub L. No. 116-136, 134 Stat. 281, 516 (emphasis added).

*Dial* involved a prisoner's challenge to the BOP's denial of his request for transfer to a residential reentry center under 18 U.S.C. § 3624(c). 2025 WL 868757, at *1. Section 3624(c) states that the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community" and that "[s]uch conditions *may* include a community correctional facility." 18 U.S.C. § 3624(c)(1) (emphasis added). Section 3624(c)(4) further states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisoners under section 3621." 18 U.S.C. § 3624(c)(4).

Neither case bears on the one before the Court. Unlike the statutory schemes involved in *Andrews* and *Dial*, the FSA "established a system of ***mandatory*** time credits for incarcerated

11

individuals who participate in recidivism reduction programming, with limited exceptions."
*Valladares v. Ray*, 130 F.4th 74, 77 (4th Cir. 2025) (emphasis added). No exception pertains
here. Other district courts analyzing habeas petitions challenging the BOP's reincarceration of
prisoners in violation of the FSA's mandatory time credit system have rejected arguments that
the court lacks subject matter jurisdiction. *See, e.g.*, *Kuzmenko v. Phillips*, No. 2:25-cv-663-
DJC-AC, 2025 WL 779743, at *4 (E.D. Cal. Mar. 10, 2025) (holding that it had subject matter
jurisdiction because "the core of Petitioner's claim centers on the BOP exceeding its statutory
authority as it pertains to FSA credit application, rather than an individualized, discretionary
decision."); *Martin v. Phillips*, No. 2:25-cv-687-DJC-AC, 2025 WL 732829, at *3 (E.D. Cal.
Mar. 7, 2025) (same).

　　　The BOP's plenary control over "the place of [a] prisoner's imprisonment" under 18
U.S.C. § 3621(c) does not render inoperative the FSA's "system of mandatory time credits",
*Valladares*, 130 F.4th at 77, which unambiguously requires that "[t]he Director of the Bureau of
Prisons ***shall*** transfer eligible prisoners . . . into prerelease custody or supervised release." 18
U.S.C. § 3632(d)(4)(C) (emphasis added). Nor does it strip this Court of its jurisdiction over Mr.
Adepoju's claim that the BOP violated this provision of the FSA. Thus, this Court clearly has
subject matter jurisdiction over this action.

　　　　　**2.**　　　**This Court Retains Personal Jurisdiction Despite the Government's
　　　　　　　　　Transfer of Mr. Adepoju Under *Rumsfeld v. Padilla*　　　　　**

　　　"The plain language of the habeas statute [] confirms that for core habeas petitions
challenging present physical confinement, jurisdiction lies in only one district: the district of
confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). "[J]udicial review under 28
U.S.C. § 2241 must be sought in the district of confinement at the time of the filing of petition,
not in the sentencing court." *Bowers v. U.S. Parole Com'n*, 746 F.Supp. 617, 618 (E.D. Va.

1990) (citing *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1990)). The "district of confinement rule arises not from the fact of prisoner's presence, but from the location of the prisoner's 'custodian.'" *Id.* "Thus, the Supreme Court has held that the jurisdictional requirement of 28 U.S.C. § 2241 is satisfied so long as the district court has personal jurisdiction over the prisoner's custodian." *Id.* (citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973)).

"[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld*, 542 U.S. at 441; *see also Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021) ("[T]he government's post-filing transfer of a § 2241 petitioner out of the court's territorial jurisdiction does not strip the court of jurisdiction over the petition."); *Rivera-Perez v. Stover*, 757 F.Supp.3d 204, 211 (D. Conn. 2024) (stating that the "application of FSA time credits" is a "type of relief [that] can be effectuated by the BOP generally, not any one warden specifically"). "If a prisoner is transferred during the course of litigation, 'habeas jurisdiction as a general matter continues to be in the district where the prisoner was incarcerated at the time the habeas petition was filed.'" *Simpson v. Ashcroft*, 321 F.Supp.2d 13, 15 (D.D.C. 2004) (quoting *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 n.1 (D.C. Cir. 1998)).

On March 27, 2025, when the Petition was filed, Mr. Adepoju was in custody at Northern Neck Regional Jail in Warsaw, Virginia. (ECF No. 6, at 8.) The BOP then moved him to a fourth placement without notice—after he filed his Petition—to FCI Allenwood Low in Allenwood, Pennsylvania. (ECF No. 8, at 1 n.1; *see also* ECF No. 18, at 2–3.) Mr. Adepoju's transfer to FCI Allenwood Low "does not strip the court of jurisdiction over the [P]etition."

13

*Anariba*, 17 F.4th at 446. Because Mr. Adepoju properly filed the Petition naming his immediate custodian at the time the Petition was filed, this Court retains jurisdiction. *See Rumsfeld*, 542 U.S. at 441.

**B.   This Court Waives the Exhaustion Requirement**

Before properly bringing a § 2241 habeas petition in federal district court, a petitioner must exhaust his or her administrative remedies. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (stating that "[a]s a general rule, in the absence of exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent . . . courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief") (internal citation and quotation marks omitted). "[B]ecause exhaustion requirements for filing pursuant to § 2241 are judicially imposed, this Court has discretion to waive exhaustion in certain circumstances and proceed to the merits of petitioner's claim." *Myers v. Williams*, No. 2:15-cv-49, 2015 WL 9304550, at \*4 (N.D.W. Va. Dec. 21, 2015).

Mr. Adepoju contends that "this Court should waive the exhaustion requirement" for three reasons. (ECF No. 6, at 9.) First, Mr. Adepoju asserts that he "cannot meaningfully challenge his rearrest because, despite having been reincarcerated for over a month, he has yet to have been informed by *any* prison official, either at the BOP or in any local jail, the reason for his arrest." (ECF No. 6, at 9 (emphasis in original).) Second, he asserts that "administrative exhaustion would be futile because 'BOP's arrest was allegedly due to its national policy' of rearresting non-citizens in prerelease custody." (ECF No. 6, at 9 (quoting *Kuzmenko*, 2025 WL 779743, at \*4; *Martin*, 2025 WL 732829).) Third, Mr. Adepoju contends that "every extra day he has to spend in [incarceration] constitutes irreparable harm." (ECF No. 6, at 10.) Mr. Adepoju

14

further represents that he "has started the exhaustion process", (ECF No. 6, at 9 (citing ECF No. 6-5)), but states that "it is expected to take weeks, if not months, for his remedies to be fully exhausted." (ECF No. 6, at 9.)

Because this Court finds that exceptional circumstances exist involving irreparable harm to Mr. Adepoju, the Court waives the exhaustion requirement.

### C.    Mr. Adepoju's Removal from a Residential Reentry Center and Reincarceration Violates the First Step Act

#### 1.    Statutory Framework

"Congress enacted the FSA in 2018 which, among other mechanisms, established a system of time credits and provided eligible inmates the opportunity to earn those credits for participating in evidence-based recidivism reduction programming and productive activities." *Valladares*, 130 F.4th at 79. Under the FSA, "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, ***shall*** earn time credits." 18 U.S.C. § 3632(d)(4)(A) (emphasis added). Interpreting this language, the United States Court of Appeals for the Fourth Circuit has held that "[t]he award and computation of time credits is mandatory." *Valladares*, 130 F.4th at 79. However, "the FSA deems certain prisoners 'ineligible to receive time credits'" in the first instance "if they are 'serving a sentence for a conviction' under any of sixty-eight 'provisions of law' enumerated in 18 U.S.C. § 3632(d)(4)(D)." *Id.* (quoting 18 U.S.C. § 3632(d)(4)(D)). Mr. Adepoju's crime of conviction is not listed as an excepted provision of law.

Once a prisoner earns time credits, the FSA mandates how they must be applied:

Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities ***shall*** be applied toward time in prerelease custody or supervised release. The Director of the Bureau of

15

Prisons *shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added).  Like subsection (d)(4)(A), governing the earning

of time credits, subsection (d)(4)(C), regarding the application of the credits, is mandatory.

*Kuzmenko*, 2025 WL 779743, at *5 (stating that "the BOP does not have the discretion to

exclude an eligible prisoner from having his earned time credits applied under the FSA, because

the FSA language in 18 U.S.C. § 3632(d)(4)(C) is mandatory").[7]  However, a prisoner is

ineligible to apply earned time credits to prerelease custody if he or she is subject to a final order

of removal.  18 U.S.C. § 3632(d)(4)(E) ("A prisoner is ineligible to apply time credits under

subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of

the immigration laws . . . of the Immigration and Nationality Act").

2.   **Analysis**

As an initial matter, this Court joins the *Kuzmenko* Court, which confronted nearly

identical facts, in expressing its deep concern regarding the BOP's reincarceration of Mr.

Adepoju without notice and absent any explanation as to the basis for his reincarceration.  *See*

*Kuzmenko*, 2025 WL 779743, at *5.  "Detaining an individual without any explanation is not

only chilling, but also flatly inconsistent with any notion of due process." *Id.*

_____

[7] Other subsections of the FSA use the permissive term "may," reflecting Congress's intent that "shall" be construed as mandatory language. *See* 18 U.S.C. § 3632(d)(E)(6) (stating that "[t]he incentives described in this subsection *shall* be in addition to any other rewards or incentive for which a prisoner *may* be eligible") (emphasis added); 18 U.S.C. § 3632(e)(2) (stating that "any reduction that includes the loss of time credits . . . *shall* not include any future time credits that the prisoner *may* earn") (emphasis added); *see also In re Rowe*, 750 F.3d 392, 396–97 (4th Cir. 2014) (describing "shall" as "more sternly mandatory" than "may" and stating that "whatever the merits of believing 'may' means 'shall,' they do not apply when Congress has employed the two different verbs in neighboring statutory passages") (internal quotation marks and citation omitted).

16

Notably, the parties agree on the both the relevant facts as well as the meaning of much of the operative language in the FSA and its application here. First, the United States agrees that Mr. Adepoju is not an "ineligible prisoner" who is prohibited from earning time credits under 18 U.S.C. § 3632(d)(4)(D). Mr. Adepoju is not "serving a sentence for a conviction under any of the [enumerated] provisions of law" that would render him ineligible to earn time credits. 18 U.S.C. 3632(d)(4)(D); (ECF No. 6, at 12; ECF No. 18, at 3.)

Second, the United States concedes that Mr. Adepoju accrued enough time credits to be released to prerelease custody. As an eligible prisoner who successfully completed the requisite recidivism reduction programming and activities, Mr. Adepoju earned FSA time credits. (ECF No. 6-4, at 3–5 (BOP records showing that as of November 2, 2024, Mr. Adepoju had earned 390 time credits).) The parties agree that the BOP released Mr. Adepoju from prison and placed him in a residential reentry center on December 4, 2024, after he "accrued hundreds of days of earned time credits and maintained the minimum or low recidivism risk necessary to apply credits under the [FSA.]"[8] (ECF No. 6, at 2; *see also* ECF No. 18, at 1 (admitting that Mr. Adepoju was "transferred to prerelease custody pursuant to the First Step Act").)

Despite the parties' agreement on the relevant facts, the United States argues that "the FSA does not require that Adepoju be transferred to prerelease custody" because "he is a deportable noncitizen." (ECF No. 18, at 2.) In support of its contention, the United States advances the novel argument that the requirement in § 3632(d)(4)(C) of the FSA that the BOP "shall transfer" eligible prisoners to prerelease custody does not mean what it says when applied to deportable noncitizens. The United States bases this argument entirely on another subsection

---

[8] Because Mr. Adepoju was not sentenced to any term of supervised release, the credits could only be applied to prerelease custody.

of the same provision of the FSA—§ 3632(d)(4)(E)(ii)—which requires that the Attorney

General "shall ensure" that such prisoners be "subject to [removal] proceedings" "at a date as

early as practicable during the prisoner's incarceration."  (ECF No. 18, at 2, 5.)  This argument

founders.

Section 3632(d)(4)(E) states:

> (E) Deportable prisoners ineligible to apply time credits.—
>
> > (i) In general.—
> >
> > A prisoner is ineligible to apply time credits under subparagraph (C) *if the prisoner is the subject of a final order of removal* under any provision of the immigration laws . . .
> >
> > (ii) Proceedings.—
> >
> > The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182[9], 1227[10]) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)[11]) at a date as early as practicable during the prisoner's incarceration.

18 U.S.C. § 3632(d)(4)(E) (emphasis added).  Based on the unambiguous language of this

section, it is evident that Congress considered which classes of deportable prisoners would be

ineligible to apply time credits to prerelease custody and decided that only those who are the

"**subject of a final order of removal**" would be ineligible.  18 U.S.C. § 3632(d)(4)(E)(i).  Mr.

Adepoju is not subject to a final order of removal—so section 3632(d)(4)(E) does not apply to

him.  Subsection (ii) merely requires the Attorney General to ensure that deportable noncitizens

who seek to earn time credits are subject to removal proceedings "as early as practicable during

---

[9] 8 U.S.C. § 1182, *inter alia*, lists the "classes of aliens ineligible for visas or admission."

[10] 8 U.S.C. § 1227, *inter alia*, lists the "classes of deportable aliens."

[11] 8 U.S.C. § 1228(a) governs the "removal of criminal aliens."

the prisoner's incarceration." 18 U.S.C. § 3632(d)(4)(E)(ii).  Subsection (ii) does not, as the

United States contends, somehow nullify the FSA's explicit mandate that the BOP "shall transfer

eligible prisoners . . . into prerelease custody."  18 U.S.C. § 3632(d)(4)(C).

Tellingly, the United States fails to cite to any authority supporting its novel reading of §

3632(d)(4)(E)(ii).  Rather, it asks the Court to interpret the provision in a way that is plainly at

odds with the statutory language by finding that the BOP may elect *not* to transfer to prerelease

custody one class of eligible prisoners—deportable noncitizens.  This reading of the FSA is

untenable.  It lacks support in the plain language of the statute, and no court, including this one,

has read the statute in the manner the United States urges.

Thus, the removal from a residential reentry center and reincarceration of Mr. Adepoju,

an FSA-eligible prisoner not subject to a final order of removal, violates the First Step Act.

> **D.**      **Mr. Adepoju's Removal from a Residential Reentry Center and**
> **Reincarceration Also Violates the Due Process Clause**

> **1.**      **Legal Standard**

Under the Due Process Clauses of the Fifth and Fourteenth Amendments,[12] a person may

not be deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418

U.S. 539, 556 (1974) ("Prisoners may also claim the protections of the Due Process Clause.

They may not be deprived of life, liberty, or property without due process of law.").  Thus, the

first step in analyzing a procedural due process claim is to identify whether the alleged conduct

affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).  A liberty

---

[12] "The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States[.]" *Chapman v. Bacon*, No. 3:14cv641 (MHL), 2016 WL 1071014, at *2 n.4 (E.D. Va. Mar. 17, 2016) (quoting *Castillo v. McFaddan*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005)).

interest may arise from the Constitution itself or from "an expectation or interest" created by laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has "held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). However, the Supreme Court has "also held . . . that a liberty interest in avoiding particular conditions of confinement may arise from state [or federal] policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*[.]" *Id.* at 222.

Demonstrating "an expectation or interest" created by federal or state law requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015). First, a plaintiff must make a threshold showing that the deprivation imposed by the infringement of this expectation or interest amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487 (1995). Second, if the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that the statute at issue "'grants its inmates . . . a protected liberty interest in remaining free from that restraint.'" *Puranda v. Johnson*, No. 3:08cv687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 780 F.3d at 253). "[W]ith the baseline established, [the Court] determine[s] whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254).

With respect to the second prong of the two-part analysis, to assert a liberty interest created by law or policies, a petitioner must show that he or she has an "'objective expectation'

in the liberty interest 'in such a way that an inmate could reasonably expect to enforce [it] against prison officials.'" *Desper v. Clarke*, 1 F.4th 236, 247 (4th Cir. 2021) (quoting *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 465 (1989))). "That objective expectation can be created by 'substantive predicates' that 'guide' or 'limit' official discretion and that use 'explicitly mandatory language' such that 'a particular outcome must follow' if those predicates are satisfied." *Id.* (quoting *Thompson*, 490 U.S. at 462–63).

### 2. Mr. Adepoju Identifies a Protected Liberty Interest in the Application of His FSA Time Credits to Placement in Prerelease Custody

First, Mr. Adepoju satisfies the threshold showing necessary for a due process violation because his removal from prerelease custody and subsequent reincarceration imposed an atypical and significant hardship relative to the ordinary incidents of prison life for Mr. Adepoju. The BOP's removal of Mr. Adepoju from the residential reentry center where he was serving his sentence and reincarceration to a jail, and subsequently, a federal prison, even a low security one, "present[ed] a dramatic departure from the basic conditions of [Mr. Adepoju's] sentence." *Wilkinson*, 545 U.S. at 223; *see also United States v. Burke*, 694 F.3d 1062, 1064 (9th Cir. 2012) (acknowledging "the general understanding that restrictions at a halfway house are significantly less than those at a custodial facility"). This Court is satisfied that Mr. Adepoju's reincarceration imposed "an atypical and significant hardship" relative to Mr. Adepoju's baseline condition of serving his sentence in a residential reentry center.

Second, the FSA created "'objective expectation'" in Mr. Adepoju's placement in a residential reentry center "'in such a way that [Mr. Adepoju] could reasonably expect to enforce [it] against prison officials.'" *Desper*, 1 F.4th at 247 (quoting *Thompson*, 490 U.S. at 465)). As discussed above, under the FSA, "[t]he award and computation of time credits is mandatory." *Valladares*, 130 F.4th at 79. The FSA uses "explicitly mandatory language" in mandating that

21

"[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release" and that the BOP "*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). As an FSA-eligible prisoner not subject to a final order of removal, Mr. Adepoju has demonstrated that he had an objective expectation in his placement in a residential reentry center following his accrual of time credits under the FSA. Because Mr. Adepoju was not sentenced to supervised release, the BOP was required to apply his time credits to prerelease custody.

The United States's citation to *Blair v. Leu* is inapposite. There, the court determined that the petitioner did not allege a violation of due process when the BOP "remove[d] him from a residential drug treatment program available to inmates, completion of which confers eligibility for a discretionary sentence reduction." No. 2:22cv278 (DEM), 2023 WL 3831816, at *1 (E.D. Va. May 1, 2023). In so finding, the *Blair* court held that "§ 3621(e) grants virtually unfettered discretion to the BOP", providing that "eligibility for [drug treatment program] is 'determined by the Bureau,' . . . and that the BOP '*may*' reduce the sentence of prisoners convicted of a nonviolent offense who completed [drug treatment program]." *Id.* at *3 (quoting 18 U.S.C. § 3621(e)) (emphasis added). Unlike the statute at issue in *Blair*, the FSA does not afford the BOP discretion regarding the calculation or application of time credits. *See Kuzmenko*, 2025 WL 779743, at *5 (stating that "the BOP does not have the discretion to exclude an eligible prisoner from having his earned time credits applied under the FSA, because the FSA language in 18 U.S.C. § 3632(d)(4)(C) is mandatory")

22

Thus, Mr. Adepoju asserts a protected liberty interest in his placement in a residential reentry center as an FSA-eligible prisoner not subject to a final order of removal.

### 3.   Mr. Adepoju Has Demonstrated That He Was Deprived of a Protected Liberty Interest Without Due Process of Law

Mr. Adepoju was removed from the residential reentry center in which he was placed and reincarcerated without notice or explanation.  The United States does not dispute that Mr. Adepoju "was not given any notice, explanation, or an opportunity to contest this decision" or that "the BOP has still not provided Mr. Adepoju or counsel with any explanation for his reincarceration[.]"  (ECF No. 6, at 3.)  "Detaining an individual without any explanation is not only chilling, but also flatly inconsistent with any notion of due process." *Kuzmenko*, 2025 WL 779743, at *5.  Thus, under these circumstances, Mr. Adepoju's removal from the residential reentry center and reincarceration without notice or explanation violates due process.

Given this unconstitutional conduct by the United States, each day Mr. Adepoju spends in FCI Allenwood Low constitutes irreparable harm.

## IV.  Conclusion

For the reasons articulated above, the Court will grant Mr. Adepoju's Petition, (ECF No.

1), and deny Respondents' Motion to Dismiss, (ECF No. 17).

An appropriate Order shall issue.

Date: **5|14|25**                                    _____
Richmond, Virginia                          M. Hannah Lauck
                                                            United States District Judge